MOUNTAIN STATES LEGAL FOUNDA-
TION on behalf of its individually
named members, Plaintiff,

v.

The BOARD OF COUNTY COMMISSION-
ERS OF the COUNTY OF BOULDER,
COLORADO, et al., Defendants.

Civ. A. No. 82-K-1486.

United States District Court,
D. Colorado.

Sept. 10, 1982.

---

William H. Mellor, III, Gale A. Norton and Casey Shpall, Denver, Colo., for plaintiff.

Ann T. Raisch, Boulder County Atty., Joseph de Raismes, Boulder City Atty., Boulder, Colo., Jeffrey D. Larson, Longmont Asst. City Atty., Longmont, Colo., for defendants.

## ORDER

KANE, District Judge.

This case comes before me on the plaintiff's motion for a temporary restraining order. The following chronology is drawn from the present record of pleadings and exhibits admitted into evidence on September 8, 1982:

On March 1, 1982 the Boulder County Board of Commissioners rejected participation in the crisis relocation plan which was prepared and approved by the Denver Metro Area Crisis Relocation Planning Committee under the auspices of the Federal Emergency Management Agency. This latter agency designated the Denver metropolitan area as a high risk area likely to experience the direct effects of nuclear weapons in the event of a nuclear war. Instead of participation, the defendant Board voted funds to produce and distribute a pamphlet informing the public of possible consequences of a nuclear war and urging residents to work for multilateral disarmament.

On March 11, 1982 the Board created a volunteer task force to write the pamphlet. On the same date the Boulder City Council passed a resolution appropriating $3,500.00 toward production and distribution of the pamphlet. On April 22, 1982 the Board passed a resolution appropriating $3,500.00 from the county general fund to subvent the cost of production and distribution of the pamphlet.

On August 10, 1982 the defendant City of Longmont enacted a resolution to put on the ballot for an October 5, 1982 election a referendum which provides the people of the City of Longmont who are registered to vote with the opportunity to vote on an advisory question of whether the United States government should propose to the Soviet Union that both countries agree to halt immediately the testing, production

and further deployment of all nuclear weapons, missiles, and delivery systems in a way that can be checked and verified by both sides. On the same date, the City of Longmont appropriated $600.00 toward subvention of the production and distribution of the pamphlet.

On August 26, 1982 a draft of the pamphlet was presented to the Board of County Commissioners for review and it was approved with minor revisions. On the same date the Board appropriated an additional $1,500.00 for its production and distribution. For purposes of this hearing it is established that printing of the pamphlet is scheduled to begin on this date, September 9, 1982 or within such a short time hereafter that immediate court action is requested.

The motion before me asks that I restrain the defendants, their agents, employees and persons acting in concert with them from taking any action which leads to the production or distribution of the pamphlet to the residences of Boulder County until such time as the plaintiff's motion for a preliminary injunction can be heard.

There are established burdens placed on a litigant who seeks a temporary restraining order or a preliminary injunction. First, such a plaintiff must establish that it has standing to seek the relief requested. Standing is premised on assumptions that persons with a real interest in the outcome of the proceedings will more effectively litigate the case and that judicial resources will be used more efficiently as a result. The concept of standing is rooted in Article III of the Constitution which requires that there must be a case or controversy in order for a federal court to have jurisdiction. ■ In the instant case I find that the plaintiff has met its burden of establishing standing. The ground is a little shaky because of numerous references in the pleadings to taxpayers and the expenditure of public funds which clearly would not support standing. Even so, there are sufficient

allegations that the named individuals on behalf of whom the plaintiff sues are residents of Boulder County and the cities of Boulder and Longmont who allege deprivations of their individual rights guaranteed by the First Amendment to satisfy me that they and their organization have a real interest in the outcome of the proceedings to litigate the case effectively and in earnest. I note further that the determination of standing is a "prudential" exercise.[1] Suffice it to say that at this juncture the named members of the plaintiff have a "personal stake" in the outcome.[2] There is no question that the plaintiff organization is capable of vigorously litigating nor is there one that the relief requested would make a practical difference if granted.

The plaintiff also has the burden of establishing that there is a threat of irreparable injury, that the threatened injury to the plaintiff's members outweighs any damage which would result to the defendants and that the injunction or restraining order would not be adverse to the public interest. These issues are not difficult of resolution in this proceeding. A violation of a First Amendment right is an irreparable injury under any definition of the term. There is no damage which a government agency could endure which would outweigh the injury occasioned by the denial of the rights of freedom contained in the First Amendment. Finally, the public interest is always and foremost in the protection of individual rights. These comments may seem catechistic, but the protection of the rights of the people guaranteed by the Constitution is the very justification for the existence of the federal courts.

■ Thus we come to the pivotal question and that is whether the plaintiff has established a substantial likelihood of success on the merits. I have carefully reviewed all of the pleadings and the documents in evidence and I am satisfied that the plaintiff has not met this burden. The question presented is whether the use of

**1.** *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

**2.** *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

taxpayer funds by these governmental bodies violates fundamental liberties, including freedom of speech and the right to petition the government for redress.

 The general rule is that the use of public funds for partisan campaign purposes is improper. The government may not take sides in election contests or bestow unfair advantage to one of several competing factions. This rule does not, however, prohibit the government from taking positions which engender political debate. Any judge should be extremely cautious when called upon to exercise extraordinary judicial authority in the area of political questions. In truth, had not the Supreme Court decided *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) as it did, I would have dismissed this case outright under the doctrines of judicial restraint and political questions. As it is, I don't believe it is either the province or the function of courts to regulate the political utterances of other branches of government in the absence of a showing that the conduct of the government is intentionally undertaken to distort the electoral process. Virtually every utterance of a public official is subject to dispute and disagreement by some member of the polity. Yet, courts are without authority to enjoin the propagandizing efforts of government officials in the usual course of events.

In the instant controversy, the undisputed fact is that the undertaking of the writing and production of the pamphlet preceded the referendum resolution in Longmont by five months. I have read the pamphlet and the crises relocation plan in their entireties. Both are clearly biased and intended to further particular points of view which are mutually antithetical. Fortunately, I am not called upon to decide which, if either, is correct or better reasoned. I am only called upon to determine whether the pamphlet is being used intentionally to distort the electoral process and I find that it is not.

A secondary point which needs to be addressed is whether a public referendum issue is an election at all. The exigencies of ruling on a motion for temporary restraining order do not allow me the time to expound on this point. Suffice it to say that the ballot issue really accomplishes nothing; it does not perpetuate anyone in office; it does not prevent anyone from gaining office and it creates no burden on the public fisc. At best it permits those who are registered to vote in Longmont to express an opinion, if they so choose, on an issue of public concern so that some public officials might obtain some guidance from the result. Thus, the sufficiency of the relationship of the referendum issue to the electoral process so as to require judicial intervention is questionable.

For the foregoing reasons the motion for a temporary restraining order is denied. The case will be set for preliminary injunction hearing on the application of the parties. If such application is made, the parties are directed to consider and advise the court whether trial on the merits should be advanced and consolidated in accordance with Rule 65(a)(2) F.R.Civ.P.